UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

MICHAEL HILL,                    )
                                 )
    *Petitioner*,               )
v.                               )    No. 1:07-cv-159
                                 )    *Chief Judge Curtis L. Collier*
STEPHEN DOTSON, WARDEN           )
                                 )
    *Respondent*.               )

## **M E M O R A N D U M**

Michael Hill ("Hill") has filed a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Hill contends he was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution, rendering his guilty pleas unknowing and involuntary. Specifically, Hill claims trial counsel failed to prepare adequately for trial; to advise him adequately about the elements of the three offenses for which he was indicted; and in effect, coerced him into pleading guilty because the petitioner had "no confidence that trial counsel was willing and prepared to vigorously represent him at trial." Respondent has filed a motion for judgement as a matter of law (Court File No. 5). After reviewing the record and applicable law, the Court concludes the motion for judgment as a matter of law (Court File No. 5) will be **GRANTED** and the § 2254 petition is without merit, and it will be **DISMISSED** (Court File No. 1).

**I.     Standard of Review**

A state criminal defendant may obtain federal habeas relief if he can demonstrate he is in custody pursuant to the judgment of a state court in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254. Under Rule 8 of the Rules Governing Section 2254 Proceedings in the United States Districts Courts, the Court is to determine, after a review of the

response, the transcript, record of state court proceedings, and the expanded record,[1] whether an evidentiary hearing is required. If a hearing is not required, the district judge may dispose of the case as justice dictates. After carefully reviewing the required materials, the Court finds it unnecessary to hold an evidentiary hearing.

Federal courts review decisions of the state courts pursuant to 28 U.S.C. § 2254(d) which is a part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). This statute generally limits a federal district court's jurisdiction to review habeas corpus claims adjudicated on the merits in the state courts. 28 U.S.C. § 2254(d). In particular, a court considering a habeas claim must defer to any decision by a state court concerning that claim unless the state court's judgment (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1) and (2).

A state-court decision is contrary to Supreme Court precedent if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. *Brown v. Payton*, 544 U.S. 133, 141 (2005) *citing Williams v. Taylor*, 529 U.S. 362, 405 (2000); *Early v. Packer*, 537 U.S. 3, 8 (2002). "A state-court decision involves an unreasonable application

---

[1] The Court admonishes Respondent, that in the future when the Court Orders Respondent "to file **all** documents considered by the state courts with any dispositive motion, so this Court will be able to determine if the record supports the findings of the state court[,]" (Court File No. 2), it expects Respondent to file **all** of the documents as ordered by the Court. Although Respondent failed to file any state court briefs or the exhibits filed during the state post conviction hearing, this Court relied upon the description of those items contained in the state appellate court's opinion, when analyzing the claims.

2

of [the Supreme Court's] clearly established precedents if the state court applies [the Supreme Court's] precedent to the facts in an objectively unreasonable manner." *Brown v. Payton,* 544 U.S. at 141 *citing Williams v. Taylor*, *supra*, at 405 and *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002).

A state court's determination of a factual issue shall be presumed to be correct and the presumption of correctness can only be rebutted by clear and convincing evidence. 28 U.S.C. § 2254 (e)(1). Credibility findings made by state courts are entitled to the presumption of correctness. *McQueen v. Scroggy,* 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied,* 520 U.S. 1257 (1997), *overruled on other grounds by In re Abdur'Rahman*, 392 F.3d 174 (6th Cir. 2004), *judgment vacated*, 545 U.S. 1151 (2005); *Smith v. Jago,* 888 F.2d 399, 407 (6th Cir. 1989), *cert. denied,* 495 U.S. 961 (1990).

The grounds asserted by Hill in support of his present § 2254 petition for writ of habeas corpus are similar to the grounds asserted by Hill in his state post-conviction hearing and appeal in the Tennessee courts. The review in this case involves an essentially identical record of that considered by the state courts.

In reviewing each ground asserted by Hill as set forth below, the record reflects Hill received a full and fair hearing on the merits of the factual issues in the state court proceedings, and the state court's findings of fact are supported by the record. Absent any clear and convincing evidence to the contrary, this Court presumes the findings of the state courts to be correct. 28 U.S.C.§ 2254(d). This Court also finds that the state courts adequately resolved the questions of law.

## II.   Procedural Background

Hill pleaded guilty on November 17, 2004, in the Criminal Court of Bradley County, Tennessee, to three counts of rape in exchange for a 12-year sentence to be served at 100 percent.

Hill did not pursue a direct appeal but did file a state petition for post conviction relief on March 28, 2005. Following a hearing on November 23, 2005, the trial court denied relief and entered an order dismissing Hill's post conviction petition (Addendum No. 1).

Hill appealed to the Tennessee Court of Criminal Appeals and on June 30, 2006, the appeals court affirmed the trial court's dismissal of Hill's petition, and the Tennessee Supreme Court denied his application for permission to appeal (Addenda Nos. 3 & 4).

On April 9, 2007, Hill filed this instant § 2254 petition for a federal writ of habeas corpus, raising the same grounds for relief he previously raised in his Tennessee post-conviction hearing and his appeal.[2] Hill contends his guilty plea was involuntary and unknowing as a result of trial counsel's ineffectiveness.

## III. Factual background

This case arises from Hill's convictions for rapes committed against his step-daughter. The following facts are taken from the Tennessee Criminal Appeals Court opinion affirming the state post conviction court's denial of post conviction relief:

> At the post-conviction hearing, the petitioner testified that he hired his attorney in October 2003 to represent him in a divorce case against his then-wife, Jeanette Hill, and that the grand jury indicted him on the rape charges in January 2004. He said he hired the same attorney to represent him on the criminal charges. He said that he was on bond until he entered his guilty pleas in November 2004 and that he met with his attorney approximately twelve times. He said that his ex-wife and other witnesses testified at his divorce trial regarding his step-daughter's allegations and that his attorney "questioned them some, but he didn't have a defense." He said that during the meetings, he would give his attorney information that would help the case but that his attorney would not listen to him. He acknowledged that his attorney went over witness statements with him, including statements by his step-daughter, his ex-wife, and the pastor in his ex-wife's church. He also acknowledged that his attorney went over the statement with him that the petitioner made to Detective

---

[2] This case was transferred from the Western District.

Scoggins.

The petitioner testified that before he entered the pleas, he never expressed an interest in entering guilty pleas to his attorney. He said that his attorney first talked to him about entering pleas several weeks before the trial date and that his attorney advised him to accept the plea offer. He said that the night before he entered his pleas, his attorney met with him, his mother, his two brothers, and his friend. He said that he signed and initialed documents given to him by his attorney but that he did not read them.

The petitioner testified that he did not insist on going to trial, despite the fact that a jury had been called in, because his attorney had not prepared him for trial and he "didn't know what else to do." He acknowledged that when he entered the pleas, the trial court asked if he was pleased with his attorney and that he answered affirmatively. He said his attorney never explained the elements of the offenses or the lesser included offenses to him. He said that he entered the guilty pleas because he did not know that he could fire his attorney but that he wanted to fire his attorney because he had not prepared him for trial. He said that approximately one week after he entered his pleas, he contacted his attorney and told his attorney "it just wasn't right, you know, that I should have went to trial." He said his attorney told him, "You can file a post-conviction on it."

On cross-examination, the petitioner acknowledged that he was under oath during the plea hearing and that he told the trial court that his attorney was prepared and that he had no complaints about him. He said he "went along with whatever [his attorney] said." He said that his family listened to the tape of his statement and recommended he take the plea offer but that they did not know anything about the law. He acknowledged testifying in a deposition for his divorce case and being cross-examined. He acknowledged that his attorney believed he was not a good witness. He acknowledged he had some experience with the criminal justice system because he had been investigated "a few times" for rape allegations. He acknowledged that in addition to the twelve times he met with his attorney to talk about the criminal case, he also met with his attorney to discuss the divorce case and that the cases involved the same issues because the rapes were the basis for the divorce. He acknowledged telling Detective Scoggins that he raped his step-daughter but said that the statement was not true.

Nora Asalee Hill, the petitioner's mother, testified that the night before her son's trial date, she and her other two sons met with the petitioner's attorney. She said the petitioner's attorney hugged the petitioner and kept insisting that the petitioner plead guilty. She said the petitioner "got rattled, he didn't understand, he didn't know. His response, he finally said, 'Okay, I will plead guilty.' " On cross-examination, Ms. Hill denied that she recommended to the petitioner that he plead guilty and said that she "just went along with the rest of them whenever they said that."

5

The attorney testified that he had been an attorney for seventeen years, that he had been in the Navy Judge Advocate General's Corps, that he had worked for the district attorney's office, and that he began his own practice doing mostly criminal defense work in 1994. He said he had handled many sexual assault cases. He said he first became involved with the petitioner in October or November 2003, when the petitioner came to his office to speak to him about a statement the petitioner had made to law enforcement about conduct occurring between him and his step-daughter. He said that he met the petitioner "more times than I can really count and ... from October of 2003 till this case was concluded in November [2004], I bet there was not a week that went by where I did not see [the petitioner] or have telephone contact with him on a very frequent basis." He said he believed the petitioner had a "great deal of difficulty in understanding the seriousness of the conduct that he had at least admitted to."

The attorney testified that he prepared the divorce case and criminal case and that he was grateful to have the divorce case because it allowed him access to extensive discovery. He said he did not file a motion for a bill of particulars because it would have alerted the court and the state that the petitioner should have been charged with two additional counts of rape of a child. He said he did file and argue a motion to suppress the petitioner's statement to Detective Scoggins. He said that he had deposed the petitioner's ex-wife for the divorce case and that one strategy in the criminal case was to discredit the ex-wife. He said the petitioner did not want him to "attack" his ex-wife, because he believed they would reconcile.

The attorney testified that he met with a private investigator and obtained the victim's school records and that the records did not reveal any problems. He said that the petitioner gave him a list of witnesses on three occasions and that he attempted to call the witnesses at least twice while the petitioner was present. He said some of the witnesses did not want to be involved when they heard the petitioner was accused of
molesting his step-daughter. He said the petitioner had written incriminating letters to his ex-wife, which would have been used by the prosecution in this case.

The attorney testified that during the divorce case, the petitioner "testified so abysmally ... was so disconnected with reality," that he knew they would have to win the criminal case through cross-examination. He said that during the summer, he realized the petitioner "wasn't playing with a full deck" and had him evaluated. He said the state's forensic interviewers found the petitioner was "perfectly sane." He said he also sent the petitioner to a psychiatrist, Dr. Billard, to determine if there was a psychiatric defense. He said that he and Dr. Billard met with the petitioner three times and determined that petitioner's desire to go to trial was "tantamount to suicide" but that he did not stop preparing for the case. He said he did go through the charges with the petitioner during the weeks before the trial date. He said he and his

6

partner went through the depositions of the witnesses with the petitioner.

The attorney testified that on March 9, 2004, he received a twenty-year offer from the state but that the petitioner rejected it. He said that on September 24, 2004, the state offered the petitioner a fifteen-year sentence, which the petitioner also rejected. He said that at that point, he knew it was likely they would be going to trial. He said he then investigated the jury panel, had exhibits prepared, and visited the victim's school.

The attorney testified that on the day before the trial date, the petitioner told him he would not enter a plea agreement and signed a statement reflecting his decision. He said that later that day, he had a court reporter come to his office while he went over the range of punishment, the entire indictment, and the evidence with the petitioner, in order to protect himself from any malpractice claim that may have arisen if the petitioner had gone to trial and received a sentence greater than twelve years, the final offer the state made.

The petitioner's attorney testified that the only mistake he made was waiting until the night before the trial date to sit down and talk to the petitioner with his family. He said that when he played the audiotape of the petitioner's statement for the petitioner's family, they told the petitioner to take the plea offer. He said that the petitioner accepted the state's twelve-year offer that night with his family present and that they contacted the judge to ask if he would accept the plea agreement. He said the judge agreed to accept the pleas but said a jury would be called in for the trial in case the petitioner changed his mind. He said that on the morning of the pleas, he was ready to go to trial in case the petitioner backed out of the plea agreement at the last minute.

The attorney testified that approximately ten days after the guilty pleas, the petitioner told him he was not happy with the pleas. He said he told the petitioner to think about it for a few days because it was unlikely the trial court would allow the pleas to be withdrawn. He said he met with the petitioner a few days later, and they discussed the petitioner's right to pursue post-conviction relief.

On cross-examination, the petitioner's attorney said that he had told the petitioner it was in the petitioner's best interest to accept the plea offer but that he would do whatever the petitioner wanted him to do. He acknowledged that the petitioner wanted to go to trial and wanted to testify until the day before the trial date. He acknowledged the petitioner signed a document the day before the trial date that stated he was not accepting the state's offer.

*Hill v. State*, 2006 WL 1864494, *1-4, (Tenn.Crim.App.2006).

**III.    Analysis**

   *A.    Ineffective Assistance of Counsel Claim*

Hill claims trial counsel's ineffectiveness coerced him into pleading guilty, thus rendering his guilty pleas unknowing and involuntary. Specifically, Hill contends counsel coerced him into pleading guilty because counsel failed to prepare adequately for trial; to advise him adequately about the elements of the three offenses for which he was indicted; and because Hill was not confident trial counsel was willing and prepared to vigorously represent him at trial.

The state contends Hill has failed to show the state courts improperly determined the facts presented at the state post conviction hearing, or the state courts unreasonably applied a United States Supreme Court decision or reached a decision that was contrary to that reached by the United States Supreme Court.

Hill's ineffective assistance of counsel claim and coerced plea claims are intertwined. Therefore, it is first necessary to determine if Hill was denied effective assistance of counsel in violation of the Sixth Amendment. If Hill's constitutional right to effective assistance of counsel was not violated, then the Court will dismiss his claim that his plea of guilty was not a knowing and voluntary plea due to counsel's ineffective assistance. *Tollett v. Henderson*, 411 U.S. 258, 266-267 (1973).

   *1.    Applicable Law*

The state courts concluded Hill failed to meet the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The Sixth Amendment provides that a criminal defendant is entitled to the effective assistance of counsel. In order to establish ineffective assistance of counsel, Hill must show not only that his attorney's representation fell below the standard of competence demanded

8

of attorneys in criminal cases but also that there is a reasonable probability that, but for the attorney's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-88.

To demonstrate a deficiency in representation, Hill must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Then, he must plead and prove that his attorney's deficient performance prejudiced the defense. *Id.* The *Strickland* test, however, must be adjusted in cases where a defendant has pled guilty instead of being found guilty after a trial. *Thomas v. Foltz*, 818 F.2d 476, 480 (6th Cir.), *cert. denied*, 484 U.S. 870 (1987). To successfully challenge a guilty plea on the ground of ineffective assistance of counsel, Hill must show that his attorney's performance fell below an objective standard of reasonableness and show a reasonable probability that, but for counsel's errors, Hill would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985); *Nagi v. United States*, 90 F.3d 130, 134 (6th Cir. 1996), *cert. denied*, 117 S. Ct. 994, 136 L. Ed. 2d 875 (1997); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994); *Sullivan v. United States*, 11 F.3d 573, 576 (6th Cir. 1993); *United States v. Smith*, 981 F.2d 887, 894 (6th Cir. 1992). To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a bare assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3rd Cir. 1995).

"[R]eviewing court[s] must remember that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional

judgment.'" *Wong v. Money*, 142 F.3d 313, 319 (6th Cir.1998), quoting *Strickland*, 466 U.S. at 690. "An error of counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *Id*. at 691.

The state courts applied the holding of *Strickland*, to Hill's ineffective assistance claims and found that counsel had, under the circumstances, performed reasonably and in a manner that did not prejudice the defense. The record supports these findings.

### 2. *Counsel's Performance*

Hill was indicted on one count of Rape of a Child, a Class A felony, and two counts of Rape, a Class B felony. These charges carried a minimum sentence of fifteen years and a maximum sentence of forty-eight years. Because Petitioner believed it was in his best interest to accept the states plea offer and presumably to avoid the possibility of such a sentence, Petitioner accepted the plea offer and entered "a best interest guilty plea"[3] to three counts of rape and agreed to serve one hundred percent of a twelve year sentence.

The state trial court concluded Hill's attorney was a credible witness and was prepared, "overly prepared if anything," to proceed to trial on the day Hill entered his plea—a conclusion that is supported by the record. Relying upon counsel's testimony and, in part, upon Hill's testimony under oath during his plea colloquy that he had no complaint about his trial counsel, the trial and

---

[3]The trial judge described a "best interest plea" as a plea where "you don't want to say 'I'm guilty,' but you realize under the evidence that the jury will probably find you guilty." (Addendum No. 1, Plea Transcript, p. 3).

"[W]hile most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of a crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *North Carolina v. Alford*, 400 U.S. 25, 37 (1970).

10

appellate courts determined counsel did not render ineffective assistance and denied relief. *Hill v. State*, 2006 WL 1864494, *4, *6 (Tenn.Crim.App. 2006). As explained below, this finding is fully supported by the record.

Trial counsel's testimony reflects he was thoroughly prepared to try Petitioner's case on the day Petitioner entered his plea (Addendum No. 2, pp. 56-93). Petitioner's counsel testified he met with Petitioner or had telephone contact on a weekly basis;[4] he filed a motion to suppress which was denied after a hearing; he interviewed witnesses; he worked on jury selection; prepared exhibits, hired an investigator and psychiatrist; obtained the victim's school records and visited her school; deposed Hill's ex-wife and gained extensive discovery through the divorce case;[5] and he and his law partner reviewed the statements with Petitioner. Counsel explained his strategic reasons for not filing certain motions and his belief that Hill had difficulty understanding the seriousness of the conduct to which he had allegedly admitted to the prosecution's witnesses. In addition, counsel explained he would have defended the cases first, by trying to discredit Hill's wife and show that her motive for having her daughter fabricate these charges was so she would be awarded all the marital property upon their divorce, and second, to demonstrate the daughter never exhibited any behavior or notified anyone about the alleged abuse, arguably indicating the alleged criminal sexual behavior did not take place.

However, counsel ultimately concluded Hill needed to plead guilty because the evidence

---

[4] Counsel was initially hired to represent Hill in his divorce case and while that case was pending, Hill was indicted for the rape of his step-daughter. Hill hired counsel to represent him in the criminal case.

[5] The divorce was filed by his wife on the basis of the alleged rape of her daughter by Hill.

11

against him was overwhelming. Based on the fact that the victim disclosed what transpired with respect to her and Petitioner, and almost five hours later when Petitioner was interviewed by Detective Scoggins, he gave the same facts, counsel concluded Petitioner would likely be convicted.[6] Additionally, counsel had serious reservations about letting Hill testify at trial because he testified so abysmally during the divorce case.

Counsel hired a court reporter and met with Hill the afternoon prior to the trial date and discussed the range of punishment, the entire indictment, and all of the evidence that would be introduced against him at trial. Given the circumstances—Petitioner's alleged admissions to several people and his abysmal deposition testimony—counsel made a strategic decision to recommend Petitioner enter a guilty plea and Petitioner agreed to plead guilty. Nevertheless, counsel was prepared to go to trial on the date Hill entered his guilty plea.

During Hill's plea colloquy he testified under oath that he had no complaint about counsel's services and no one threatened, harassed, or coerced him into entering his guilty pleas (Addendum No. 1, pp. 2-4). If Hill believed trial counsel was incompetent and unprepared to try his case, his remedy was not to plead guilty. Rather, his remedy was to inform the court during his plea colloquy that counsel was not prepared to proceed to trial as he wished and that his plea was based on his belief that he had no viable option but to plead guilty.

Petitioner has presented neither evidence of any plausible defense theories or to support his factually unsupported claims that counsel's trial preparation was inadequate; counsel failed to advise his him adequately about the elements of the three indicted offenses; and counsel's lack of trial preparation pressured him into pleading guilty. Consequently, these factually unsupported claims

---

[6] Hill maintained that he lied to the detective.

12

are insufficient to warrant habeas relief.

### 3. *Prejudice*

However, assuming for the sake of discussion that counsel's performance was deficient and his advice was not reasonable, which the Court does not find, Petitioner has failed to present, and the Court is unable to find, any evidence of prejudice. Hill has not alleged, in his § 2254 motion, the kind of prejudice necessary to satisfy the second part of the *Strickland* test as modified by *Hill v. Lockhart*. Petitioner alleges counsel's failure to prepare adequately for trial and advise him of the elements of the offenses for which he was indicted, effectively coerced him into pleading guilty. Thus, the determination whether the alleged errors prejudiced Hill by causing him to plead guilty rather than go to trial depends on the likelihood that more trial preparation would have led counsel to change his recommendation as to the plea or would have led Hill to demand a trial. This assessment will depend in large part on a prediction of whether the evidence likely would have changed the outcome of the case.

The problem in the instant case is Hill has not identified what trial counsel should have done differently in his trial preparation to give Hill confidence in counsel or identified what evidence counsel would have uncovered had he prepared more throughly. Hill claims counsel failed to prepare him for trial. Trial counsel advised Hill not to testify during his criminal trial because he testified so abysmally during his divorce proceedings. Nevertheless, assuming Hill had decided to testify, he was more prepared than many defendants since he had participated, in effect, in a dress rehearsal, when he was deposed during his divorce case.

There is nothing in the record identifying what trial counsel should have done differently in

13

his trial preparation. Here, as to trial counsel's advice to plead guilty, there is not any evidence to suggest that had counsel prepared more for trial he would have found favorable evidence, and therefore, would have advised Hill to plead not guilty or that the outcome of Petitioner's case would have been different had it gone to trial. Thus, the Court concludes Petitioner has not shown the requisite prejudice for this aspect of the claim.

    *4. Conclusion*

In the final analysis, Hill cannot satisfy either prong of the *Strickland* test. To establish ineffective assistance of counsel, Hill must show his counsel's performance was deficient and the deficient performance so prejudiced the defense that the plea was unfair and the result unreliable. *See Rompilla v. Beard*, 545 U.S. 374, 380 (2005). There is nothing in the habeas petition or record to indicate his counsel's performance was deficient. Furthermore, the record reveals that trial counsel was prepared to try the case and additionally, the record supports the reasonableness of trial counsel's advice to Hill to accept the state's plea offer.

Hill's decision to plead guilty was not the product of deficient representation by counsel. Hill has not presented any evidence to dispute the state courts and trial counsel's conclusions that the state possessed incriminating evidence against Hill that was very strong. A guilty plea was a reasonable and wise choice. By pleading guilty, Hill was able to obtain some significant benefits. In exchange for his plea, he no longer was at risk for being convicted of Rape of a Child, a Class A felony. Given the evidence against him, Hill demonstrated acumen by pleading guilty to three counts of rape, and avoiding the possible increased incarceration if he was convicted on a Rape of a Child count and two charges of rape. In exchange for his guilty plea, one of the charges was reduced and he was no longer looking at a 15 to 48-year sentence. Instead, the plea agreement

14

provided for a 12-year sentence. Considering the possible consequences if the jury convicted him, this was the best result for Hill under the circumstances.

There is nothing to suggest Hill did not understand the circumstances of his guilty plea or that counsel's advice was unreasonable or deficient. Moreover, there is nothing in the record demonstrating Hill suffered any prejudice as a result of entering into the plea agreement rather than proceeding to trial. Viewing his plea in light of the alleged evidence against him, which was contrary to his claim of innocence, and in light of the benefits he received for his plea, the plea's validity cannot be seriously questioned.[7] Thus, the Court concludes the state courts' rejection of this claim is well-supported as the record reflects a lack of evidentiary support for Hill's contention that counsel's alleged unpreparedness and lack of adequate advice coerced him into pleading guilty.

The record before the Court reflects that Hill's counsel did not perform deficiently and Hill's plea was voluntary, knowing, and intelligent. Hill was obviously concerned he would receive a harsher sentence if he went to trial and his alleged admissions were introduced to the jury, and that, along with the fact he believed the jury would probably find him guilty, is what caused Hill to plead guilty by entering a "best interest plea." However, even if the Court were to conclude that Hill's

---

[7] The Court observes that no such factual basis was included in the instant plea colloquy. Tenn. R. Crim. P. Rule 11 provides a court shall determine that there is a factual basis for the plea and the Supreme Court of the United States has cautioned that pleas coupled with claims of innocence should not be accepted unless there is a factual basis for the plea, *see North Carolina v. Alford*, 400 U.S. 25, 38 n. 10 (1970). Nevertheless, the trial court apparently was satisfied that there was a factual basis for the plea as evidenced by its statement to Hill during the plea colloquy that "[o]rdinarily I don't know anything about the pleas I take, but having heard what I've heard in this case I believe you have made a wise choice today." (Addendum No. 1, Plea Transcript, p. 4). During the time in which this criminal case was pending, counsel filed a motion to suppress Hill's statement; a suppression hearing was held; and the trial court denied the motion. Thus, the Court presumes the trial court determined there was a factual basis for the plea.

15

counsel's representation fell below the standard of competence demanded of attorneys in criminal cases, which the Court does not find, Hill has failed to prove the prejudice required to satisfy the second prong of the *Strickland* test as modified by *Hill*. Hill has not identified what further preparation would have revealed; thus, the Court is unable to assess the prejudicial effect of something that has not been identified.

Accordingly, Hill has offered no clear and convincing evidence to rebut the presumption of correctness that must be accorded the factual findings made by the state courts. 28 U.S.C. § 2254(e)(1). Nor has he demonstrated the state court decision is contrary to, or an unreasonable application of Federal law. Accordingly, having carefully reviewed the record, it appears the state courts' denial of Hill's ineffective assistance of counsel claim, which is supported both by the record of the guilty plea and credible testimony of trial counsel, was not contrary to or an unreasonable application of *Strickland* or *Hill v. Lockhart*. Accordingly, Hill's allegation that trial counsel was ineffective will be **DISMISSED**.

### B. Knowing and Voluntary Guilty Plea

Hill contends he did not enter a voluntary, knowing, and intelligent plea when he entered into the plea agreement with the State, because his guilty plea was in effect, coerced, as a result of counsel's failure to prepare for trial. The Court's resolution of Hill's ineffective assistance of counsel claim necessarily requires denial of habeas relief on his claim that his guilty pleas were coerced due to ineffective assistance of counsel. Additionally, as explained below, the record reflects that Hill's guilty pleas represents a voluntary and intelligent choice among the alternative courses of action that was opened to him. *See North Carolina v. Alford*, 400 U.S. 25, 31 (1970) ("The standard [for determining the validity of guilty pleas] was and remains whether the plea

16

represents a voluntary and intelligent choice among the alternative courses of action open to the defendant").

A voluntary and intelligent plea of guilty made by a defendant who has been advised by competent counsel may not be collaterally attacked. *United States v. Broce*, 488 U.S. 563, 574 (1989), citing *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). A defendant may show his guilty plea was not a voluntary and intelligent act because his attorney rendered ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. *Tollett*, 411 U.S. at 267; *Ray v. Rose*, 491 F.2d 285, 289-290 (6th Cir.), *cert. denied*, 417 U.S. 936 (1974). A plea of guilty is valid if it is entered voluntarily and intelligently, as determined under the totality of the circumstances. *Brady v. United States*, 397 U.S. 742, 749 (1970); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir.), *cert. denied*, 512 U.S. 1222 (1994). The Constitution requires that such circumstances reflect that the defendant be informed of all the direct consequences of his plea. *Brady*, 397 U.S. at 755; *King*, 17 F.3d at 153. The totality of the circumstances must be considered when determining
if a guilty plea was voluntary. *Garcia v. Johnson*, 991 F.2d 324, 327 (6th Cir. 1993) (citation omitted). In determining whether a plea is coerced, the Supreme Court of the United States has instructed that Courts should consider the representations made during the plea hearing.

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

17

Case 1:07-cv-00159  Document 18  Filed 09/25/08  Page 17 of 20  PageID #: 71

The plea colloquy between the state trial court and Hill clearly shows Hill knowingly and voluntarily entered his best interest guilty plea. The most persuasive evidence of the voluntariness of Hill's plea is found in the plain language of the plea hearing transcript. The plea hearing transcript and the testimony of Hill and his attorney are supportive of the findings of the state court.

This Court has considered the entire record and has determined the record indicates a knowing, intelligently and voluntary waiver by Hill of his constitutional rights and a knowing and voluntary plea of guilty. Hill acknowledged he understood and waived each constitutional right the trial court addressed. (Addendum No. 1, Plea Transcript pp. 1-2). Hill disavowed that anyone put pressure on him to enter a guilty plea. (Addendum No. 1, Plea Transcript p. 2). When the trial court specifically ask Hill if he understood he had a right to plead not guilty and have a jury trial and the court informed him the jurors were present for his trial, Hill acknowledged he understood. The plea was described as a best interest plea—a plea where a defendant does not want to say "I am guilty" but he realizes that based on the evidence, the jury will probably conviction him. Hill acknowledged he believed it was in his best interest to plead to three counts of rape.

The state appellate court, in further support of its conclusion to affirm the trial court's finding that the guilty pleas were knowing, voluntary, and intelligent, observed that:

> [A] form drafted by the petitioner's attorney, which discussed the decision to plead guilty and the rights the petitioner would give up in entering a plea, was admitted as an exhibit at the post-conviction hearing. The petitioner initialed each paragraph of the document and signed the end of the form, including a paragraph that stated "I acknowledge that you have assisted me in making this decision; however, ultimately the decision to plead guilty or not guilty is mine and mine alone."

*Hill v. State*, 2006 WL 1864494, * 7.

Hill's allegation he did not enter a voluntary, knowing, and intelligent plea is refuted by the

18

record and the state courts' conclusion that Hill's plea was not coerced and was entered knowingly, intelligently, and voluntarily is supported by the record. In light of Hill's sworn statements during his plea colloquy and his plea document, his claim of coercion to plead guilty is unsupported by facts, incredible, and unsupported by the record. Consequently, Hill has not established that his plea was involuntary, unknowing, and unintelligent.

Therefore, Hill is not entitled to an evidentiary hearing on this issue. If the Court were to allow an evidentiary hearing on this claim, it would undermine and eliminate the chief virtues of the plea bargain process—speed, economy, and finality. *Blackledge*, 431 U.S. at 71-72. To permit collateral attacks on guilty pleas to be based on contentions that, in the face of the record, are wholly incredible, would make every guilty plea subject to attack under § 2254 and render the oral responses given by a defendant in open court meaningless. *Blackledge*, 431 U.S. at 74.

In conclusion, Hill, making nothing more than self-serving allegations his pleas were coerced, has not satisfied his heavy burden of rebutting the presumption of the sworn 9+declarations he made in open court. Accordingly, since Hill has failed to offer any clear and convincing evidence to rebut the presumption of correctness that must be accorded the factual findings made by the state courts, 28 U.S.C. § 2254(e)(1), or demonstrate that the state court adjudication of Hill's claims were contrary to or an unreasonable application of federal law, he is not entitled to any habeas relief.

## V. CONCLUSION

Respondent's motion for judgment as a matter of law (Court File No. 5) will be **GRANTED** as to all claims. Petitioner is not entitled to an evidentiary hearing, and his § 2254 petition (Court File No. 1) will be **DISMISSED**.

A judgment will enter.

19

/s/
**CURTIS L. COLLIER
CHIEF UNITED STATES DISTRICT JUDGE**

20